Our final case of the day is Craftwood II against Generac Power Systems. Mr. Cordero. Good morning, Your Honors. May it please the Court, Charles Darrell Cordero representing Craftwood II and Craftwood III plaintiffs' appellants in this matter. Your Honors, the federal system requires standing to assure a court that is deciding an actual rather than a hypothetical controversy. The question is simply, is there a controversy here? And as this Court has repeatedly stressed, the requirements of Article III are undemanding. The Supreme Court has held that an identifiable trifle is enough. The three accepted measures of standing are whether the plaintiff suffered an injury of impact, whether the injury is fairly traceable to what the defendant did, the defendant's conduct, and can the court continue? Counsel, let's assume that you were right that the district court has confused standing with the merits. Suppose we think of this appeal as an appeal about the merits. Why is the district court wrong to think that you lack a good record? The district court is wrong for three reasons, Your Honor. Number one, there is no record evidence that there is an established business relationship between Craftwood III and either defendant. And in fact, the evidence is barren in the record on whether there is an EBR between Craftwood II and CMI. The only evidence that was even proffered on that point was between Craftwood II and Generact. Number two, there is no evidence that the fax number was obtained in a proper way. And number three, most importantly, the opt-out disclosure that is contained in the junk faxes does not comply with the standards of the law. What the district court said, if I understand it, is, well, it's true, the wording of the opt-out disclosure is defective. But it didn't make any difference because Craftwood was in fact able to opt out. Now, why is that a mistake, a legal mistake? Are you denying that Craftwood did indeed opt out? Is this a factual dispute? Mr. Brunges attempted to opt out, but interestingly enough, he did not do so in a legal way, in the sense that the law requires that an opt-out request have certain subject matter, and he didn't do that in a proper way. And the law... Is there a factual dispute about whether this enabled Craftwood to opt out, in fact? After it purported to opt out, did he get any more unsolicited faxes? There is nothing in the record to suggest that he received additional unsolicited faxes, but he did receive the unsolicited faxes before he opted out. Yes. But the district court thought that any disclosure that suffices to enable someone to stop unwanted faxes is enough to prevent an award of damages. Now, is there any contrary authority, for example? Are there appellate decisions holding that even if the disclosure is enough to support an actual opt-out, there is still proper to award damages? I'm not aware of any appellate authority on this particular question of the sufficiency of the opt-out disclosures. I do note that the plain reading of the statute says that the... The plain reading of the statute says there has been a violation, because there hasn't been the proper language. The question I'm asking is whether that entitles your client to a remedy, if it was good enough to enable an actual opt-out. It does, because the injury occurred before the client attempted to opt out. Why? Why isn't the injury a difficulty in opting out? The injury is the receipt of the fax. No. No. The receipt of the fax produces exactly the same loss. You know, you waste toner, you spend your time reading it. Whether the opt-out language is correct or not, the opt-out language is important only for somebody who wants to opt out, or who, for example, doesn't know he can opt out. That's why I'm asking the question this way. The injury was suffered before the opt-out. No. The injury that was suffered before the opt-out was the injury of getting any fax. That is correct. That injury would have been identical had the opt-out language been letter perfect. And that is true. And the injury is receiving the fax. And 11th Circuit said in Florence Indocrine that the injury results from the fax, and then going on to hold that it wasn't an advertisement. You're now thinking back in standing terms again. I said don't think about standing. There's injury in fact for purposes of standing. The question I'm asking is whether there is a statutory remedy when the opt-out language is imperfect, but it's enough to enable the plaintiff to opt out. Answer, yes. And because the three-part requirements of the EBR defense are for the defendant to establish business relationship defense. I'm not asking about established business relationship. I'm asking about the technical deficiency of the opt-out language. The opt-out language technical deficiency is the third requirement element of the established business relationship defense. It is not enough to have an established business relationship. The third component is that there be a sufficient opt-out notice. That's the only section in the statute where that appears. So at the risk of rephrasing the question, counsel, I guess anything relating to the opt-out language given your client's ability to exercise rights to opt-out looks like what the Supreme Court was calling just the bare procedural slip in Spokio. It's hard to see how it harmed your client at all. The harm to the client was receiving the junk facts in the first place. That is not a bare procedural violation. I understand that. It's never been held by any court except perhaps the Eighth Circuit that the plaintiff need to establish that he was injured as a result of the defendant's failure to satisfy one element of an affirmative defense. The injury need not be that As to the question of what on the merits, is there a viable claim here? The answer is yes, because all elements of the opt-out disclosure are required. There is no substantial compliance standard at work here when you have a federal statute that requires a mandatory disclosure. The district court in this case ignored the concrete injuries the plaintiff suffered. The court nevertheless held that in order to satisfy, in order to have standing, the plaintiff had to show that the plaintiff was injured by the particular way in which it But that's not what the precedent of the Supreme Court has held. Outside the taxpayer context, has repeatedly rejected this idea of a subject matter nexus between the claimed injury and the conduct. In the case of Duke Power that we cite in our brief, the claim there was that the Price-Anderson Act was unconstitutional. Counsel, do you think the Supreme Court's impending decision in PDR Network will bear on this case? Your Honor, I'm not familiar with that case. Well, then I guess you won't be answering that question. I'm sorry. It deals with the validity of the FCC's opt-out regulations. Oh, on the question of whether the opt-out regulations are required for solicited faxes, that does not bear on this case. Because there is, despite the assertion in the headings of the appellee's brief, there is no evidence that these faxes were solicited. And in fact, the only evidence in the record is that the defendants did not obtain prior express permission before sending the faxes to the plaintiffs. So the issue of the solicited fax rule that the court is, I'm sure, very familiar with, as addressed in Bayes-Yakov, is simply irrelevant to this case, because this is not a solicited fax situation. That's what you say. But, of course, in arguing a case, you always have to consider the possibility that the court will agree with your adversary on some aspect of the case. And that's why I'm asking whether PDR Network could bear on this case. No, because we are aware... I don't see how you can say no when you've already told me you don't have any clue what it is. Your Honor said that it had to do with the validity of the FCC's regulations. Technically, it has to do with the Hobbs Act. And over what period of time can you complain? Because of the Hobbs Act... But this is not the time and place for you to try to learn something about a Supreme Court case that it might have helped for you to have looked up before this argument began. Understood, Your Honor. I came here when we were... I was addressing this... Thank you very much. Article III question. Thank you, Your Honor. Mr. Resses, perhaps I should begin there. Do you think PDR Network will bear on this case? Your Honor, for the defendants' appeal... Just leave the microphone alone. Your Honor, not being familiar with that case, I don't know where to address it. 0 for 2. Sorry about that. I will, however, try to answer a question that Judge Easterbrook put to the Plaintiff's Council about whether there was any authority at the appellate level regarding a case. And it held that the bare procedural violation that Spokio talks about is not actionable as some type of informational harm, and it affirmed a summary judgment for the defendants. Now, it may be helpful to go back and remember that the standard of appellate review here is a clearly erroneous standard, and we do agree with the requirements for Article III standing, but we respectfully submit that the District Court finding that the plaintiffs lacked Article III standing was not clearly erroneous. First, the District Court was not clearly wrong when it found that the faxing took place within an established business relationship. So let me ask you why that didn't simply confuse the merits with standing. It's extraordinary to think that standing turns on an affirmative defense. Well, if it is clear from the record that there is no injury in fact, because there is this relationship, and because the opt-out notice was effective to allow the plaintiffs to opt out, whether you call it standing or merit space, they have no claim. That was a point that was made in conversation with your adversary, but suppose, for example, we see a claim for sexual harassment on the job. One thing that a plaintiff has to prove is that the harassment was sufficiently severe or pervasive to be actionable. Suppose a defendant employer moves to dismiss for lack of standing on arguing that the harassment was not sufficiently severe or pervasive. Does that work? I would assume that the plaintiff would be able to come forward with some evidence to create a genuine issue of material fact as to pervasiveness of the harassment. Who is the finder of fact as to that issue? Who is the finder of fact as to that issue? I would think it would have to be a jury in that case. So it's merits rather than standing. In that situation, I think it's merits. Why is this different? If there is no injury because if the injury in fact requirement has not been met... Your argument is that it hasn't been met because the statute wasn't violated because the established business relationship affirmative defense is satisfied, right? Yes. The argument you make, as it's phrased in your own brief, is that the plaintiff needs to show standing by a violation, to show injury by a violation of law. Now, where do you find that in the Supreme Court's cases? Well, I think that standing as an issue should be decided... I wish you would address my question. I'm not aware of a case that... It's never said that. The Supreme Court has said that standing is injury in fact caused by the defendant's action, redressable by the judiciary. Those three things, if you've got them, you have standing. And so I can't see why this isn't clear standing here. There's injury in fact. Getting an unwanted facts uses up a little toner and disturbs peace of mind. It's caused by the defendant sending the unwanted facts. And it's redressable in damages. What more do you need? That's standing. That's what the Supreme Court says. Well, but here, the record that was developed... I didn't ask about here or this record. I asked about the principle. All I'm saying, Your Honor, is on this record, we established that there was no injury in fact. That is the merits. If you file a tort suit and can't show that the defendant ever hit you, then you lose on the merits. You don't lose for lack of standing. In fact, this is the If the plaintiff fails on the merits, the federal judge is supposed to dismiss on the merits and not for lack of jurisdiction. I understand what Your Honor is saying. But I do think that when it comes to the procedural posture of this case and the fact that this arose in a 12B1 context, that we're on the merits. It's true there are disputed issues of material fact. But if we make this as a standing motion, the judge can resolve those issues. And therefore, the judge can say, having made findings of fact, that the defendant wins on the merits and therefore there's no standing. That just is the clearest violation of bell against hood that you could imagine. We submitted an uncontradicted affidavit that established a prior business relationship between CMI and the two Craftwood entities. Counsel, if you've got a good defense, then you win. But not for lack of standing. Then you win because you win. I appreciate what you're saying. I'm sorry? Doing it the right way. Doing it on the same record or a better record. Maybe, but it's difficult to see all of the confusion that we would cause if we were to affirm on the theory that this is the way you can get it standing. Can I ask you to address the plaintiff's point that to establish the affirmative defense on the merits of the established business relationship, you have to comply strictly with the opt-out notice requirements in the statute. And as St. Louis Heart Center holds, if you have a notice that provides a means by which to opt out cost free and the notice was conspicuous and the plaintiff was able to avail itself of the opportunity of opting out, the plaintiff has suffered no informational harm that's actionable. So that sounds like an argument in essence for horseshoes, hand grenades, close enough, right? As a practical matter. Well, I guess the way I would look at it is as some of the Seventh Circuit precedent has noticed in other contexts, Congress enacted the Junk Pack Protection Act not to protect them from unwanted faxes. And if they're able to opt out, regardless of the technical deficiencies, because they were able to opt out and they no longer receive any faxes, then Congress' purpose has been accomplished. The informational harm is on that basis. I take your point about whether the issue was one for a 12B1 or on some other basis, but I think the result is going to be the same. If there are no further questions for all the reasons set forth in our briefing, we would ask you to Thank you, Counsel. Anything further, Mr. Cordero? Yes, very briefly, Your Honor. I think it's very clear from the colloquy that took place that the plaintiffs have standing. I think that the remaining question of concern to the court is, well, yes, but what about the issue of the merits and is it enough that the plaintiff was able to opt out? What I would say in that Congress' purpose in enacting this law was to protect people from unwanted fax advertisements. That was Congress' purpose. You know what the Supreme Court says these days about asking what was in the contents of legislators' heads. Of course. We ask what they enacted. And what they enacted was the prohibition of unsolicited facsimile advertisements. And in that statute, if you touch all these three bases, then we will allow you to send an unsolicited facsimile advertisement. But the core prohibition of the statute is sending an unsolicited facsimile advertisement. Thank you, Counsel. Thank you, Your Honors. The case is taken under advisement and the court will be in recess. Thank you.